[No. A102151. First Dist., Div. Four. Jan. 30, 2004.]

THE CIT GROUP/EQUIPMENT FINANCING, INC., Plaintiff and Respondent, v.
SUPER DVD, INC., et al., Defendants and Appellants.

COUNSEL

Law Offices of George Baltaxe and George Baltaxe for Defendants and Appellants.

Glass & Goldberg and Edmund J. Sherman for Plaintiff and Respondent.

OPINION

**KAY, P. J.**—Appellants, Super DVD, Inc., a California corporation (Super DVD) and Julius Liu, defaulted on a commercial equipment lease, which

resulted in the issuance of a right to attach order (RTO) in favor of respondent, The CIT Group/Equipment Financing, Inc., a Delaware corporation (CIT). Appellants now appeal, contending the trial court erred in issuing this order. We affirm.

## I.  BACKGROUND

On September 14, 2000, appellant Super DVD entered into a master lease agreement with CIT for the lease of certain equipment to be utilized in its business, pursuant to lease schedules to be issued thereunder. Appellant Julius Liu guaranteed the payment of all obligations under the master lease. On the same day, the parties also entered into two lease schedules regarding two DVD duplication machines. Lease Schedule 1 required Super DVD to make 60 monthly payments of $9,901.10 and provided for an aggregate rental of $594,067.00; Lease Schedule 2 required Super DVD to make 60 monthly payments of $8,455.56 and provided for an aggregate rental of $507,434.60. The master lease provided CIT with remedies in the event of default, which included declaring all sums immediately due and payable.

According to CIT's declaration in support of the RTO, on or about December 28, 2000, Super DVD defaulted on its payments under the master lease and both lease schedules. At the time of the default, the amount owed under the master lease, pursuant to Schedules 1 and 2, exclusive of litigation costs and attorney fees, was $1,066,796.28 ($571,451.96 under Schedule 1 and $495,344.32 under Schedule 2). Then, using an investment rate of approximately 10.14 percent, CIT reduced the amount owed to its present value of $751,266.16. After due notice, CIT sold the equipment for a net recovery, after expenses, of $394,250.00, which left a balance of $357,016.16. Thereafter, CIT sought a writ of attachment to recover the deficiency. The trial court issued an RTO in the amount of $359,416.16.

## II.  DISCUSSION[1]

The issue on appeal is whether the present case is one within the purview of Code of Civil Procedure section 483.010, subdivision (a), which authorizes

[1] On January 27, 2004, respondent filed a document entitled "Notice of Summary Judgment in Favor of Plaintiff/Respondent The CIT Group/Equipment Financing Inc. and Mootness of Appeal" arguing the instant appeal is moot because it never attached any property pursuant to the RTO and due to summary judgment granted in its favor, the RTO is no longer enforceable and becomes superceded by any judgment liens created thereunder. No authority is submitted in support of this contention. As to respondent's use of facts not in the record, it is well established that a reviewing court may not give any consideration to alleged facts that are outside of the record on appeal. (*People v. Thurmond* (1985) 175 Cal.App.3d 865, 874 [221 Cal.Rptr. 292].) Accordingly, we address the merits of appellants' challenge to the issuance of the RTO.

an attachment in an action "upon a contract . . . where the total amount of the claim or claims is a *fixed or readily ascertainable amount* . . . ." (Italics added.) Appellants contend the contract in this case does not qualify because at the time the contract was executed there were too many uncertainties regarding the amount of damages.

■ Appellants argue that damages under the contract are uncertain because at the time of formation it was impossible to know how many payments would be made. Following this logic, a debt owing under a lease would never be subject to attachment. This is not the law. The term "contract" as used in Code of Civil Procedure section 483.010, subdivision (a) has been interpreted to include leases of real or personal property. (Legis. Com. com., 15A West's Ann. Code Civ. Proc. (1974 ed.) foll. § 483.010, p. 47; *Stanford Hotel Co. v. M. Schwind Co.* (1919) 180 Cal. 348 [181 P. 780] [realty]; *Walker v. Phillips* (1962) 205 Cal.App.2d 26 [22 Cal.Rptr. 727] [personal property].)

■ Additionally, " '[i]t is a well-recognized rule of law in this state that an attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite. [Citations.] The fact that the damages are unliquidated is not determinative. [Citations.] But the contract sued on must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof.' " (*Lewis v. Steifel* (1950) 98 Cal.App.2d 648, 650 [220 P.2d 769], *quoting Force v. Hart* (1928) 205 Cal. 670, 673 [272 P. 583].) Accordingly, it is not necessary that the amount owed appear on the face of the contract; it often happens that the amount due under a contract does not appear on the contract itself. (*Bringas v. Sullivan* (1954) 126 Cal.App.2d 693, 699 [273 P.2d 336].)

In *Walker v. Phillips, supra,* 205 Cal.App.2d 26, 27–28, plaintiff leased coin-operated music, amusement and cigarette machines to defendant upon a percentage and commission basis. At the time of the breach, the lease had been performed for nearly two and half years and plaintiff had been realizing profits of about $182.50 per month. (*Id.* at p. 32.) The court found damages were not too uncertain to justify discharge of an attachment where the section of lease relating to the rentals provided a clear and definite formula for the computation of damages. (*Ibid.*)

*Bringas v. Sullivan, supra,* 126 Cal.App.2d 693, involved an eight-year lease of a coin-operated music machine. There, plaintiffs agreed to install and maintain the machine in defendant's cafe, and defendant agreed to pay plaintiffs 50 percent of all moneys deposited in the machine. (*Id.* at p. 695.)

From the time of the contract's execution to the date of its breach, plaintiffs' share of the earnings averaged approximately $14.90 per week. (*Id.* at p. 696.) At the time of the breach, 393 weeks remained under the lease causing plaintiffs to be damaged in the amount of $5,855.70. (*Ibid.*) In reversing the discharge of the attachment, the court held the average weekly earnings were a sufficient basis for ascertaining plaintiffs' future damage. (*Id.* at pp. 701–702.)

The instant case provides an even clearer basis for attachment. There is no profit or other calculation to be made to ascertain the monthly rent due; each of the lease schedules sets forth the rental period and the monthly rent due for each machine. The master lease and corresponding lease schedules provide a clear and definite formula for the computation of damages, to wit: the monthly rent multiplied by the unexpired term.

Appellants have cited no case law or statute that supports their contention that the granting of the RTO was improper in this case. In fact, appellants only cite to one case in their opening brief, *Lewis v. Steifel, supra,* 98 Cal.App.2d 648. As noted, that case actually supports affirmance. As the *Lewis* court found, uncertainty as to the specific amount of ultimate damages is not a basis to deny attachment. (*Id.* at p. 650.)

Further, appellants make passing contentions that the declaration submitted in support of the RTO adds to the uncertainty regarding the amount of damages. Appellants assert the declaration fails to clearly state the remedies CIT selected. This contention is without merit. The declaration clearly states that pursuant to the terms of the master lease, CIT declared the entire unpaid rent due and payable. Appellants also assert that the declaration fails to demonstrate the investment rate used to obtain the present value of amount owed. This contention is similarly nonmeritorious; the investment rate is set forth in exhibits 3 and 5 attached to the declaration. Finally, appellants contend the declaration fails to provide information regarding whether the equipment was sold in a commercially reasonable manner as required by division 9 of the California Uniform Commercial Code. Assuming division 9 is even applicable, the record reflects that appellants' contention is without merit.

The order issuing the RTO is affirmed.

Reardon, J., and Rivera, J., concurred.